Judge King, we're ready to proceed in 25-13-15. Yes, ma'am. Thank you. Mr. Magistro? Yes, Your Honor. Good to have you with us, Mr. Magistro. Good to be here. You may proceed. Thank you, Judge King, and may it please the court. I'm Anthony Magistro and I represent the Tedericks, an ordinary couple trying to get a little bit ahead by paying extra on their mortgage every month. In this case, Loancare seeks to rewrite both the text of the West Virginia Consumer Act and the party's contracts. It seeks to add a separate check requirement, a requirement that prepayments be made by check to the note, even though the note grants borrowers the right to prepay principal at any time without imposing that condition. And below, it sought to add an intent requirement to the remedial statutory provisions of the WVCCPA that prohibit any unauthorized charges and any false representation of the amount of the debt, effectively reading the word any out of the statute. By adding these conditions to the contractual text, the parties did not agree to, and by narrowing prohibitions the legislature deliberately wrote broadly, Loancare and the court below depart from settled principles of textual interpretation because neither the WVCCPA nor the note in this case supports those provisions or reversals required. In sum, this is an easy case. We apply the plain meaning of the words that are in the statute. And there aren't any West Virginia Supreme Court cases that address this, are there? Address? There are a bunch of issues here. I'm not sure. The issue about whether the statute requires intent or not. I don't think there's anything exactly on point. I think there are a number of, there are other cases that are, that talk about how to... I'm wondering if it's worthwhile certifying this to the, this particular question to the West Virginia Supreme Court of Appeals. Well, I would, we would not object to that if that's what the court wants to do. That's always your discretion. It would be three out of my last four that you, or if you did that. I think they're getting tired of hearing from me that way, but I'm always happy to argue in front of both courts. But I think there's a reason you don't have to in this case. And that is that in this case, in spite of the, so they made this argument below three times, first two times the district court denied it, the third time that they got the district court to bite and the court dismissed the case on summary judgment. Then on appeal, they completely abandoned that error that they invited the district court to make. I think this court's precedents are clear. They don't, they don't even discuss it in their brief. They, in fact, almost make fun of us. They're acting and make the argument that we changing the subject for arguing that what the district court actually ruled on was incorrect. That's clearly not the case. We, we had our entire opening brief dedicated to that argument. And the response is, well, you're just changing the subject. This court's precedents, I'll cite Mayfield versus NASCAR in 2012 said, on a, when a, a party's failure to raise or discuss an issue in its brief, that's deemed an abandonment of that issue. So because they've abandoned the issue, I think you can rule on it yourself and, and, and reverse just on that basis alone. You've got some assistance here from the attorney general, do you not? Yes. On the, on the underlying WBCCPA claim, both the West Virginia attorney general, the solicitor general, and we also had amicus briefs from national consumer rights organizations. So there isn't anybody in this case that says the WBCCPA, or at least in this appeal that says the WBCCPA requires intent. And we would, and, you know, and so I think that that's pretty clear. And I guess I would take some direction from the court at this point. I can address that argument in detail. Before you go there, let me make sure you say there's no one in the case. I thought the district court said that. Well, I think that is in this appeal. And I, and I, and I, and I, you understand that, he's got it in this appeal. He's got it in this appeal. You're reviewing his, his order. He's the one that, right now, that's, that's the state of this case is that it requires intent. And I think, I think if we're going to look at that and Judge Stagg was pointing that direction, you're right. It is either self-occasion straightforward. I think your position, this is a strict liability statute, is that right?  And the question that comes to mind is, and Judge Stagg went there, is has the state court said that directly? And I think you're right. There's a lot that indicate that's the case. But the comfort level of being able to say that the statute is a strict liability statute, you know, when it has false representation, I mean, kind of, I don't know how you unintentionally do something false, but I mean, well, I guess it could be misleading or that sort of stuff, but we're parsing out a lot of language type information, but the answer comes from the statute. And so then the question is, is there, well, let me ask another question since I've rambled on about that. But the question I really want to ask is, is there anything in that note and the deed of trust that are unambiguous with regard to the proper application of the advance payments? And if so, then do we get to look at the Fannie Mae guidelines? OK, so I think that's two questions. The first question is. Do just that question. The other one, I was, I kind of think it's just out there. So I'll go to the question. So first of all, the note and the deed of trust expressly adopt West Virginia law, which say unambiguous terms must be applied as written. And any ambiguity in an adhesion contract like this should be construed against the drafter. Fannie Mae is not the drafter. They're not a party. They're not even a regulator. The note doesn't say we should interpret this contract based on the Fannie Mae guidelines. So none of that is, and that would be bad policy to say that you and I can enter into a contract and then some third party gets to reinterpret that contract, amend it. These guidelines change. They're not static. They change over time. That is not contract law. Contract law is you and I make a deal. We write the words we agree to in the contract. And in this case, those words are unambiguous. They say that there is a right to make a early payment of principle at any time. And that's what these plaintiffs did. They have some conditions. The condition is you can't be late on your payments. If you're not making a prepayment of principle, if you owe other fees, you haven't made your payments. But in this case, my clients made every payment on time and paid extra. There's also another requirement, and that is that you separately state that it's a prepayment. That was done here. In fact, that was done both on the checks my clients wrote and on the payment coupon form that Loan Care sent. There's a space on the form that has a blank that says prepayment of extra principle. And they filled in every month what they intended to do. So they met the clear prerequisites of the contract to make that repayment. Now, and Loan Care then was obligated to credit that prepayment based on the clear provisions of the note. And there's similar provisions in the deed that allow that prepayment at any time. They couldn't wait and credit that payment later. Does that answer your question, Your Honor? It does. What is the amount of money we're talking about that's the differential that makes up this? In this case, they had gone through several servicers. One of their earlier servicers did it correctly. And so this is the same note, but GMAC was an earlier servicer, did it correctly. That's the bottom line figure. What are we talking about? So they refinanced. And at the time of refinance, our expert calculated it was $155.56 worth of interest difference. Not a million dollars, but not de minimis either. Are you telling me that this arises from a differential, that if they had done this correctly, they would have saved $156? Yes, sir. Why wouldn't a bank just give them $156? I don't know. I looked at it and I was trying to figure that out. I got it from your perspective. I mean, this potentially is a class action, could be all kinds of other stuff to go with it. The practices are there. But from a practical standpoint, I mean, even for someone to sue for it is amazing to me that if the difference is $156 in this note, it is impressive that your clients, in terms of the way they sought to pay off this debt, it reminds me not to ramble on. But when I did real estate many, many years ago, real estate law practice, well, there were certain types. The older ones wanted to pay off the debt. Young folks just wanted to know how much it was per month. And so that's kind of what they remind me of, that generation that wants to pay off the note and burn the note. And that was their intent here. But you're telling me it all comes down, and it's rather fastidious, to $156. Well, I know it's about more than that from your perspective, but not from the banks. I can't see that. And let me tell you, that lets me go back to the underlying substantive claims, the underlying ACT claims, because the ACT deals with this situation in three different places. Rather than make me show intent, it gives them three outs. The first out is if they figure it before I sue, and I have to give them notice before I do, they can just refund the money. And that totally removes them of any liability for a penalty. The second thing is I have to send that notice of right to cure, and they can make a cure offer. And the consequences of making that cure offer, if they come back and said, we're going to pay you $156, then I would likely be barred from collecting any attorney fees if we turned that down and we didn't get more when we went to trial. And the third defense is the good faith error defense. And that is if they show something is a mistake or a mistake of fact or a, let me get to my notes on that. But, you know, the point you're making, I've got those three things, and that's a real good. But just answer this question. Are you telling me that at some point in time when this all started out, a demand was sent and said, I overpaid by $156, and the bank wouldn't take, wouldn't just give the $156, they'd rather just be sued for it? Well, it happened two different ways. First, my client... I mean, it's one thing to say, just say you don't know what the interest, don't know what it is. But did you make a specific demand for like the $156? So I don't know if we had it calculated at the point. So what I do know is prior to hiring counsel, Mrs. Tedrick regularly called Loan Care and said, I don't think you're doing this right. She complained about it. The unsophisticated woman, that's when she hired lawyers, when they wouldn't fix it. We, to calculate... You sound pretty sophisticated to me to figure out this right here. This is not an ordinary thing you can figure out. That's pretty... I think what she knew is something was wrong. She couldn't figure out exactly what was wrong. And they were doing it differently than the other servicers had done it. And then we had the... So then we sent the right to cure. You know, they're sophisticated enough to calculate what that was. They could have come back and made an offer. Heck, they could have come back and made an offer of $1,000. I imagine we're burning up way more than that just being here today. But they didn't do any of that. And that is one of the reasons why they're not entitled to the bonafide error defense. Because they don't claim this is unintentional. They think they're right. And they're not. I think on the act... Go ahead, Judge. Let me ask you, the certification thing, you kind of got past that. But what weight, if any, does the Attorney General's opinion get in West Virginia? I think traditionally, the courts in this state have given weight to the opinions of the Attorney General. The Attorney General, by statute, is permitted to give opinions, formal opinions, when asked. He doesn't really have a dog in the hunt, other than to give opinions as to what the statute is. But I think the statute... Would his brief as amicus here, in this case, be equivalent to an opinion of the Attorney General? I don't think technically. I think it is certainly the Attorney General's opinion. And I think it's pretty... The Attorney General, his name is on this brief that I have here, this green brief. And he supports your position. Yes. I think it's worth a lot. But the other thing I would point out is that it's rare that the Attorney General files amicus briefs in private civil cases. They've got a lot of stuff to do. It's not an opinion of the Supreme Court. Now, I think it's persuasive. And I think what I would... Before you all decide to certify the question, what I would ask you to do is go back and look at our brief where we explain that intent is required in certain provisions of the statute expressly. In the provisions at issue in this case, intent is not required. They are trying to add intent to that statute. Now, there are Supreme Court cases that we've cited that said that is not the way you interpret this remedial statute. You don't add words that aren't there. And words like any, there are cases that we cited, any means any. And that the Supreme Court is very clear on. And I think I'm out of time. I'm out right now. Any other questions? You've answered questions if you get them. No further questions. Very good. Thank you, Mr. Magistra. And you say, thank you, Your Honor. Mr. Killian. Good morning, Your Honors. May it please the Court. I guess I propose to look at both halves of this argument. First, talk about intent. And secondly, to talk about payment application. The Tedericks have tried to make this appeal about that intent issue. And I want to be very clear that that portion of Judge Jackson's decision is, in our perspective at most, an alternative holding. One that we did not argue for below and that we are not defend here. My friend on the other side has suggested that we urge the district court to reach that decision. But I would point the court specifically to page 18 of our summary judgment reply brief, where we said, quote, Loan care does not represent that plaintiff proved intentional conduct as a claim element. That has not been a part of our case. And we don't defend that issue here. Okay, so you're discounting the entire argument that starts at page JA876 of your memorandum in support of your summary judgment, where you do talk about rice and brine and reasonable interpretations. So, Judge Thacker, I'm sorry, I don't mean to talk over you, the Internet gives me a little bit of trouble sometimes. No, for Rice and Perrin, our position was that in those two cases, other judges had found payment misapplication, but then concluded that that still didn't violate the West Virginia CCPA. Our case, our argument has always been that this is an a fortiori situation. We don't even have payment misapplication. So how could there be a violation of the West Virginia CCPA? So to put it differently, we've tried to argue consistently that the fundamental issue in this case is the issue that the Tederiks presented in their complaint, which is whether we applied their extra principal payments correctly. That's what we sought summary judgment on. And that's the main issue that I want to defend today. So I guess I just want to clarify, though, Judge Thacker, to use my friend's metaphor, we don't have a dog in the hunt on the intent question. So for that reason, we would not. You're throwing Judge Jackson overboard. We would point the court to the other alternative holding in Judge Jackson's decision. I think they're. Coming to Richmond and abandoning. Judge King, there are portions of the decision below that we did not press for and that we don't defend here. There is a portion of the decision below that we did press for and that we do strongly defend here. I still don't really understand how you're saying you didn't press for it. The district court followed Perrine and Rice, and those are the two cases that you briefed pretty thoroughly in your memorandum and supported the motion for summary judgment. So were Rice, I mean, yeah, were Perrine and Rice decided correctly then in your view? Rice and Perrine, in our view, both involved the case of payment misapplication. And so they moved to the second question of whether there was a violation of the act, even where there's payment misapplication. And what we tried to contend. Regardless of intent or not? I think that that's sort of weaving through those decisions, Your Honor. But yes, it is not the intent question that would be presented in the affirmative defense, for example, of whether something was mistake or whether it was an accident. For instance, I'd say Rice and- So in your view, in FLE's view, does the statute require intent? We have not taken a position on that, Your Honor. Well, can you do that now? Can we do that now? Take a position? One way or the other, does the statute require intent or not? I think the particular provisions that are at issue here make that actually a difficult question. As Judge Winn was alluding in his question, as I understood Judge Winn's question, so I don't mean to attribute this to him. There is, I would say, some potential ambiguity between the prefatory language in Section 127, which refers to fraudulent and deceptive conduct, and then some of the itemized violations, which don't refer to intent. I think, in other words, that this is when a case where this issue is presented. It is an open and potentially difficult question. Our amicus, for example, has said that they believe that this is- Well, then, is this a remedial statute in your view? I think that's right, but I think the question of text is a stupendary question. And so given that, Your Honor, that's- We have- I'll come back to it, but to say we have not taken a position, and I don't think that I'm going to take one today for the court because we don't think that that's the issue in this case. We have tried to argue this case, continual payment application, and that's- Do you agree that the district court's opinion indicated that it ruled in your favor, in part at least, because the district court believed there was an intent element to that statute? I think, in part, the district court did suggest that, yes. And so that's what- And you don't necessarily agree with that, so you are discounting that or throwing the district court overboard, as Judge King would say, and redirecting our attention to what's your alternative argument? Sure. To pages 12 and 13. That's what you're trying to get to, I'm sorry. No, that's fine. To pages- the very end of the judge's opinion, pages 12 and 13, where the judge addresses what we thought to be the real issue in this case, which is whether loan care applied their payments correctly. That is the question that they pleaded in their complaint. So all that other stuff that the district court said before the very end of pages 12 and 13, that's just dicta? Alternative folding. I would put it in the category of alternative folding, Judge Thacker, that he ruled on two grounds that are independent of one another. He addressed intent, and when he talked about whether loan care meant to get it wrong, but then he turned and looked to whether loan care, in fact, got it wrong. And on page- What do we do with it? What do you do with it, Your Honor? I would suggest that the court, if the court has concerns with that portion of the opinion, and from the indications today, I'm going to make a guess that that's true. I would say that the court could acknowledge that that question is not presented in this case, that it remains an open question, and then it could be fully litigated in a case where parties are adversarial on that issue in the future where the issue is squarely presented. But for reasons that I was trying to get into in response to Judge Thacker, we think the issue could potentially be more complicated. I understand sort of the weight of authority, and certainly the opinion of the state attorney general are strong indications about what the right answer may be under West Virginia law. But generally speaking, our position is the court should not reach out to resolve an open question of state law unless that question is squarely presented. So that question you would be advocating sounds like to me a certification. But let me ask you this question. Are you saying that even if we say, assume, that this is a strict liability statute, you're saying factually, your argument is that factually it was not violated? That's correct, Judge Nguyen. And I want to point out, though, I don't suggest certification at all, because I think certification sort of kicks the can down the road on an issue where there really is no adversity between the parties. From your perspective, it wouldn't matter, because either way, you're saying you didn't do it. I mean, so to some extent, if I'm reading it, it's kind of difficult to follow, because so much below was on this intended issue. The trial judge was there, and the briefs had gone there. I get the point you're making. I think it's pretty strong that the intent element is just not there. The question, then, is if it's a strict liability statute. And it seems like I thought that would answer the question, if it goes one way or the other on that. But yours turned more on the factual determination of did you factually violate this statute based upon, I guess, the deed of trust in the note and in the payment of the interest here. That's exactly right. And that's how we tried to present the case, I think, in summary judgment below. And we think Judge Jackson got to that in his decision. And I would point the courts very specifically to the paragraph, I believe it's JA 2755. It might be 54 to 55. So wait. Let me make sure I understand this, because I think this is really critical. It does sound like we're kind of, you know, how you study something, you think you got it down, and you come in and did the arguments. I want to respect your perspective on this. That is different. But where is it that the district court made a determination that there were misapplied, that there were not either not or were misapplied payments under the terms of those documents? In other words, where did he really get to the factual part, that part you're claiming he got to? That's the page I was pointing the court toward. So if I could sort of move to that portion of my segment, the argument. So the way – Isn't that your whole argument, though? Oh, it sure is, yeah. Yeah, yeah. I mean, you see, you're getting to it. But, I mean, that's – you weren't just moving to it. You were already there. That's your whole argument, from what I understand, is that, you know, the district court determined that you didn't – there wasn't a misapplyment of payments. Right. So there's nothing to move to. You're already there. All right, then. What page is it of the district court's – It's page 12 and 13 of the slip-off that we have, which I think is 2755 or so. The judge, Judge Jackson, takes the theory of payment misapplication that the Tedericks pleaded in their complaint. Because, right, that's what you do with summary judgment. You take the theory in the complaint, and you see whether it survived discovery. And the theory that they presented was that when they made these extra principal payments, which were combined payments along with their regular monthly payment, that those payments were supposed to be applied first to extra principal and second to the monthly payment. That there is a proper sequence, according to the Tedericks. In their complaint, Judge Thacker, it's paragraphs 19, 27, and 30, where they specifically plead that order of operations. And what Judge Jackson identified – I'll happily go through the evidence in some detail with the court here. But on page 13 of his decision, he looked at those and said that the Tedericks payments, quote, fit squarely into the Fannie Mae Guideline that requires a payment first to the monthly payment and then to the principal. There's a table. We've reproduced it in our brief. It's in Fannie Mae Guideline F-1-09. It says if an extra principal payment is made along with the monthly payment, you do it in the way I just described. And if it's made separately, then you do it in the way that the Tedericks had thought that this case was originally about. But the problem, Your Honor, is that during discovery, it came to light that the Tedericks theory of payment misapplication was simply incorrect. And in fact, at summary judgment, when we put forth our statements of undisputed material back, the Tedericks did not even respond to the key facts, which are facts numbers 81 through 92 in our summary judgment brief. The way it operates in this court is that the plaintiff – excuse me – the movant puts forth a statement of undisputed material fact, and then it's up to the opponent to respond. On those 11 or 12 undisputed material facts, they did not respond. They admitted all of those facts. And what those facts show, Your Honor, is that all of the Tedericks extra principal payments, every single one because the evidence came forth in discovery, was made as a combined payment, including the regular monthly payment along with the extra principal, the bolstered file, or whatever it was in a particular month. And if you look at the guidelines, the note, and the deed of trust – and I guess I just want to emphasize, Your Honors, because Mr. Magistro has tried vigorously to run away from the guidelines, but the guidelines were one of the three legs of the stool in the complaint that they pleaded, specifically paragraph 16, 17, 18 of their second amended complaint, paragraph 67 of that complaint. They alleged that all three of those documents, the guidelines, the note, and the deed of trust, pointed to a single payment application, which was extra principal first, then monthly payment. And so we think Judge Jackson looked at the guideline because the guideline was the clearest of the three, which says they're wrong. But in addition to that, their note and their deed of trust also require the payment application process that Lomacare did. Paragraph 4 of the note, which is on page 403 of the joint appendix, defines a prepayment as a payment of principal only. And as this court recognized in the Flores case, which is an unpublished decision, so we're not sort of citing it as binding on the court, but simply as a recognition of the plain meaning of those terms, that a payment of principal only means a payment of only principal. So that I'm fair to you, and, again, I understand the difficulties of litigating and when a judge is sort of thinking something and you're talking, his head is kind of there. I don't know where I am on this, and you address this, because I think the district court fully, not just in part, based this decision on this fact that this West Virginia Consumer Credit Protection Act requires intent. I don't think it ever determined whether the payments were misapplied. This part of the decision that you're talking about, the district court had already defined false representation as a fraudulent act. So based on that definition, which is downstream of the court's holding, that this act requires intent. He said the appellate did not engage in false representation. So it seems to me that's what the district court hailed. And what you are arguing is what you probably wish he had gone to instead of focusing on that. So address that, if you will. Help me clean my mind up on that, if you will, because I'm kind of stuck on that right now. Okay. So the meat of this analysis on the paragraph that spans 12 to 13 is absolutely a focus on the type of payments, the way they are made, and how they are applied under the Fannie Mae guideline. And thus, as he says at the top of page 13, the Tedrix 180 payments, which is what this case is about, fit squarely into this category, namely the category where the servicer, quote, must apply the scheduled payment first, then apply the curtailment. And of our position, the conclusion that he draws from this, which is the factual theory, the exact opposite, really, of the factual theory that the Tedrix had pleaded in their complaint, it's a totally warranted conclusion then for the judge to say, how could there be a false representation or unfair or unconscionable conduct when the theory of payment misapplication that the Tedrix pleaded simply didn't survive discovery? But, Judge Wing, to get even more pointed to your question, if Your Honor doesn't agree that that's, in fact, what Judge Jackson did, I guess I would just remind the court that at summary judgment, this court reviews judgments, not opinions. And so while there may be portions of this opinion that misstate West Virginia law, the court exercises de novo review. And it is, we think, not an appropriate situation for the appellee who did not encourage that error and who does not defend that error. Well, the good news for you is we don't have to, I don't have to do this while you're making this argument right now, because his order is right there. And we would definitely compare where you have gone with this, with his order. And if it moves me from where I am, certainly I'm going to do that. That's the good news. Being an appellate court without an English system where you're going to get an answer right now on it, you're giving me something to reflect on. And I'm going to reflect on that in light of the way this order is written. And almost, I guess you'd say, pass it out and really get down to the meat of what this case is about. So, but thank you for advancing that. But to finish my point, Judge Wayne, if I may, it's simply not, whether Judge Jackson misstated West Virginia law, and if this court wants to clean that up, if it wants to say nothing about it, I mean, ultimately, that, of course, is the panel's prerogative. You know, when he got to the end of it, he just said, he really recognized you made an effort to comply with the Fannie Mae servicing guidelines. And in that effort, intent is not needed. And the very same reasons that we complied with the Fannie Mae guidelines are the exact same reasons why the payment application was correct under the note and under the deed of trust. And so, again, the court doesn't review opinions. It reviews judgments. That factual assertion, which, I mean, to be clear, it's summary judgment. We believe that was a characterization of the undisputed evidence. It fully takes care of all of the payment misapplication theories. I'll quickly rattle those off because Paragraph 4 of the note defines a prepayment as a payment of principle only. And these combined payments, because they included the monthly payment, a portion of which includes interest, along with the extra principle, by definition, are not prepayments. With a capital P, they're not a prepayment. And the trust, Paragraph 2, which also provides for an order of operations for applying payments, applies to all payments and says you apply first to the interest and last to the principle. So in understanding your argument you're making now and in defense of the district court, the district court went the way it did, I believe, in its opinion because that's how you briefed it. At least I'm looking, again, at your memorandum in support of Felie's motion for summary judgment. So where in your summary judgment briefing should I really focus on to, as Judge Wynn pointed out, understand the argument you're making now? Yeah, so Judge Thacker, we went through the first half of that full summary judgment brief are the statements of undisputed material fact, right? And as I was saying, the court needs to compare our statements. And then you launch right into Rice and Perron and a discussion of those. And then the following arguments are that the payments were applied correctly. I don't have that brief in front of me right now, Judge Thacker, but the conclusion of that argument was Okay, I guess my point is just that we will, of course, review it all, but I think the district court went the way it did because you briefed it the way you did. That's just one opinion. Judge King, my time's up, but may I respond to Judge Thacker's point before I close? Absolutely, and if you get other questions, we'll respond to those too. Go ahead. Thank you, Your Honor. Judge Thacker, insofar as there was ambiguity in our opening brief, we tried to put that to rest in our summary judgment reply brief. And as I cited to the court, reply brief, page 18, JA 2069, we said, and I quote, Loan care does not represent that plaintiffs must prove intent, intentional conduct as a claim element. You did say that earlier. Correct. We put that directly to him before he issued his decision. So if there was a misstatement or a misunderstanding about what we meant by Rice and Perrin, we tried to clear that up on reply and tried to reorient this case to where we thought it had always been oriented, which is that the payments were applied correctly under the note, under the deed of trust and under the Fannie Mae guidelines. Why didn't you go back to him after he filed the opinion? Well, Judge King, we won after that opinion. And as I said, I think we believe . . . You come up here and then throw him overboard. Judge King, we did not come up here voluntarily. As appellee, we were brought up here. We are making the same arguments that I think we have consistently made from summary judgment forward. I guess I would go to answer that question, Judge King. Our position is that there are alternative holdings in that opinion. And while the first one we don't defend, we absolutely defend the conduct-focused concluding portion of that decision. And so for that reason, regardless of what Judge Jackson said about intent, the independent finding that our payments, quote, fit squarely within the guidelines is a sufficient basis for this court to affirm. And we ask the court to do that. Thank you very much, Mr. Killian. Thank you. Mr. Magistro? Yes, Your Honor. Can you hear me? Yes. Okay. So it should not surprise anyone that Judge Jackson ruled the way he did. This was not isolated citations of rice and brine. They made this motion three separate times. Now, they did argue the other alternative. They did it right. But they pressed this argument. In fact, in the final opinion, Judge Jackson says it is the central issue in the case. That's how he refers to the intent issue, as the central issue in the case. So there's no question that's what he was ruling. Now, in other parts of the case, he assumes that the payments were made correctly or incorrectly and then reaches the intent argument. At the end, he has this statement. As Judge Wynn points out, what he's saying is you complied with the guidelines. You didn't do anything intentionally wrong. That's what his holding essentially is in that. And even if he is ruling that they win because they complied with the guidelines, that decision in and of itself is air because third-party guidelines to which my clients were never a party, which can change at any time, cannot bind these parties in terms of contractual interpretation. Especially in an adhesion contract with West Virginia law, which this contract explicitly makes applicable, requires you to construe against the drafter, which are the defendants in this case. So regardless of whether he's ruling based on the guidelines, that's just wrong. Next response is Flores. Flores did not involve somebody who was making full payments and an early payment at the same time. They were paying half of what they owed. If they would have been doing it with the same deed and note here, there would be no obligation to credit it because the notes and the deeds say credit first to the payment that's due. Our client made the payment that's due. That is undisputed on this record. What he's saying is that the note that defines prepayment as a payment of principle only. I would say, again, that's ambiguous when you make the payment of principle along with a full payment, especially when you make that on a coupon that is provided by the defendants. Again, look at the record. They sent this coupon that says how much for prepayment. They didn't say if you're going to make a prepayment, make a separate check. The only reason to make a prepayment is to reduce your principle balance so you pass interest. So construing the contract against the drafters, again, I would suggest that my clients, even under that tortured analysis of what a prepayment is, we still win. Finally, let's go back to the case law. I'm happy that I have associates who remind me of things. And my associate reminded me on the question of has the Supreme Court ruled on this, that there's the case of LTTD Financial. That is a, we cited it's a 2019 memorandum decision. In that case involved one of the statutory provisions here, Section 128. And what the court said was explicitly, let me find. Petitioner's argument in support of its first assignment of error turns on an assumption that intent was a necessary element for a respondent to establish his case in chief. And that because he failed to do so, the circuit court erred in ruling in respondent's favor. We do not agree as the plain language of West Virginia Code 46A2128E does not require proof of intent. That's pretty clear. And it's consistent with all of the court's analysis that we've cited as to this remedial statute. Any means any. It's a strict liability statute. We think that the Supreme Court, although they have. That really does not. I mean, if I'm understanding your opponent's argument, that doesn't matter. Because he complied with it. That's really what he's doing. Well, and I think and I think the answer is. Either way. They did not comply with it because the note allows them to make a prepayment of principle at any time. And that is not that. And they want to read this. You have to do a separate check. They want to add that language into the contract where it's not there. When you fully paid up and you make a prepayment, that is a prepayment of principle that you're allowed to make under the explicit terms at any time. Anything else? I'm out of time. And listen, any of the other judges have questions? Thank you, Your Honor. We'd ask that you'd reverse the judgment and remand it for further proceedings. Thank you very much, Mr. Magistro. Mr. Killian, we'll take the matter under advisement and adjourn court for the day. Good to have you all. Thank you, Your Honor. Thank you.
judges: Robert B. King, James Andrew Wynn, Stephanie D. Thacker